**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANDREW MICHAEL JACOBS and
KIMBERLY MARIE JACOBS,

                 Plaintiffs,                          Civil Action No.
                                                    10-cv-11469

vs.

                                                    HON. MARK A. GOLDSMITH

TRICAM INDUSTRIES, INC. and
HOME DEPOT USA, INC.,

                 Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION TO BAR PLAINTIFFS' EXPERT JOHN MORSE, AND**
**GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### I.  Introduction

This is a product liability case.  Plaintiff Andrew Jacobs claims he was injured when he fell from a ladder while working as a window installer.  Attached to the ladder was a ladder stabilizer manufactured by Defendant Tricam Industries, Inc. and sold by Defendant Home Depot USA, Inc.  In the complaint (Dkt. 1-2), Plaintiffs Andrew Jacobs and his wife Kimberly Jacobs allege negligence in the design and manufacture of the ladder stabilizer (Count I), breach of implied and express warranty (Counts II-IV), and loss of consortium for Plaintiff Kimberly Jacobs (Count V).

Plaintiffs retained John Morse to offer an expert opinion.  Defendants filed the instant motion (Dkt. 21) to exclude Morse's testimony on the ground that it does not comport with Rule 702 of the Federal Rules of Evidence and the standard for expert opinion admissibility established in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and its progeny.

1

Contending that Morse's report – the central evidence of Plainitff's case – is inadmissible, Defendants also request summary judgment in their favor on all counts.

## II. Background

According to the complaint, Jacobs was injured when "the ladder stabilizer broke apart, causing the ladder to lunge forward and plunge to the ground."  Compl. ¶ 9.  Jacobs testified in an affidavit filed with his response to the instant motion, "[w]hile I was on the ladder on June 4, 2007, I heard a 'pop' sound.  Immediately after the 'pop' sound, the arms of the ladder stabilizer flipped upward and the ladder fell toward the house."  Jacobs Aff. ¶¶ 4-5 (Dkt. 29-7).  In his previous deposition testimony, Jacobs had stated that he did not see where the "pop" sound came from.  Jacobs Dep. at 51-54 (Dkt. 21-6).

Morse's expert report concluded that the ladder stabilizer failed when the rivets holding the stabilizer together were sheared apart, and that wear marks indicated that the rivets had been "failing in shear over time."[1]  Morse Expert Report ¶ 3 (Dkt. 21-5).  Morse opined that the ladder stabilizer, as designed with two rivets, was defective and unreasonably dangerous.  According to Morse, a greater number of rivets or an alternate fastening device should have been used.  Id. ¶ 7.

Defendants challenge Morse's opinion regarding the defect that allegedly caused the ladder stabilizer to fail.  Defendants deny that the rivets caused the stabilizer to fail and argue

---

[1] According to Morse's affidavit, filed with Plaintiffs' response to the motion, rivets can be affected by both "shear" and "tension" forces:

> "Shear" refers to the force generated on a rivet that tends to cut it on a plane perpendicular to its axis.  If a rivet is used to fasten together two overlapping, parallel pieces, when the two pieces move in opposite, parallel directions, they exert a shear force on the rivet.  Scissor blades cut objects by shearing them.  "Tension" refers to the force generated by pulling on an object from end to end.

Morse Aff. ¶¶ 24-26 (Dkt. 29-3).

that Morse's lack of testing means there is no evidence to support his opinion that the rivets were indeed the cause of the failure. Defendants also dispute Morse's opinion regarding the alternate designs that Morse opines would cure the alleged defect. Defendants argue that the Morse report does not satisfy the Daubert standard because Morse did not test his theory that a different fastener for the stabilizer would have prevented the stabilizer failure.

Defendants also challenge any reference to the ladder stabilizer's "flipping up," both in Jacobs' affidavit mentioned above, and in Morse's affidavit, also filed with Plaintiffs' response brief. In his affidavit, Morse testified, "[i]n a phone conversation with me on November 1, 2010, Mr. Jacobs stated that after the 'pop,' the arms of the stabilizer flipped upward to a vertical orientation, while the ladder was leaning against the house. After that point, the ladder feet slid out." Morse Aff. ¶ 35 (Dkt. 29-3). Defendants claim that Jacobs' testimony of the "flipping up" and Morse's reliance on it in his affidavit should be disregarded by the Court on the grounds that Jacobs' testimony contradicts his earlier deposition testimony and that Morse's affidavit constitutes an improper addition to the record after close of discovery.

Plaintiffs argue that Jacobs' affidavit is consistent with his previous testimony and that Morse's affidavit "amplified the report but did not include any additional opinions." Pls.' Surreply Br. at 5 (Dkt. 31).[2]

### III. Discussion

#### a. Legal Standards

---

[2] Plaintiffs' first response was stricken by the Court for failure to conform to the Court's requirements as set out in the Case Management and Scheduling Order (Dkt. 13). Plaintiff then filed a conforming amended response, which contained a conforming Counterstatement of Material Facts and Statement of Additional Material Facts, but Plaintiff never deleted the original nonconforming Statement of Facts section. The Court notes that in considering the instant motion, it disregards this nonconforming section of Plaintiffs' amended response.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In evaluating a defendant's summary judgment motion, a court considers the evidence presented in determining whether the plaintiff has raised a genuine issue of material fact, with facts and inferences construed in the light most favorable to the plaintiff.  Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 373 (6th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  Because the Court's jurisdiction over this case is based on diversity of citizenship, state law applies to the underlying negligence and breach of warranty claims.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

Admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In Daubert, the Supreme Court ruled that it is the province of the district court to ensure that proposed expert testimony is based on "scientifically valid principles" by being both relevant and based on reliable foundations.  Id. at 597.  At the same time, the Court declined to set a definitive checklist or list, explaining that "many factors will bear on this inquiry."  Id. at 593.  In this way, "Daubert attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other."  Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 176-177 (6th Cir. 2009).  The factors

4

enumerated in Daubert include (i) whether the theory or technique in question "can be (and has been) tested," (ii) whether it "has been subjected to peer review and publication," (iii) whether it has a "known or potential rate of error," and (iv) whether the theory or technique enjoys general acceptance in the relevant scientific community. Daubert, 509 U.S. at 594. Subsequent cases have reinforced the notion that the inquiry is flexible, and that the factors enumerated in Daubert are neither definitive nor exhaustive. Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 251 (6th Cir. 2001) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)). "Daubert's general holding . . . applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho, 526 U.S. at 141.

### b. Supplemental Affidavits

At the outset, the Court finds that the affidavit submitted by Jacobs, filed as an exhibit to Plaintiffs' brief, may be considered by the Court in deciding the motion. A plaintiff may provide additional testimony in an affidavit in response to allegations or arguments in a defendant's motion unless it directly contradicts his previous sworn testimony. Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir. 2006). "If . . . there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" Id. (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). If a plaintiff was not directly questioned about an issue, and he seeks to "supplement[] incomplete deposition testimony with a sworn affidavit," such an affidavit is admissible evidence to "fill[] a gap left open by the moving party." Id. at 907.

In the instant case, Jacobs' new statements do not contradict his previous ones. Although Jacobs previously testified that he did not see where the "pop" sound came from, and that after the fall he did not see the stabilizer until the next day, see Jacobs Dep. at 51-54 (Dkt. 21-6),

5

Jacobs' new statement that the stabilizer flipped up <u>during</u> the fall does not directly contradict his previous statements.

Similarly, a review of Morse's report and affidavit indicates that they are consistent, and that the affidavit represents an elucidation of elements of his report that required more direct treatment in light of Defendants' motion.  See <u>Vanzant v. Daimler Chrysler Corp.</u>, No. 04-cv-484, 2007 WL 1026408, at *3 (S.D. Ohio Mar. 30, 2007) (allowing the sections of an expert's supplementary affidavit for which the defendants had notice of the expert's opinion). Defendants argue that Morse's affidavit is inconsistent with his report because in his affidavit, Morse relies on the deposition testimony of Jacobs' coworker, Donnie Duke, whereas in his original report he did not reference Duke's testimony.  Def.'s Rep. at 6.  The Court concludes that Morse's affidavit is not inconsistent with his report because it is clear from the affidavit that the reference to Duke's testimony is only to corroborate Jacobs' observation that the stabilizer flipped up during the accident.  Morse Aff. ¶ 36 (Dkt. 29-3).  The Court also finds that references to Jacobs' statement that the arms of the stabilizer flipped up after the "pop" sound are consistent with Morse's original report, which states: "He said he heard a pop sound and the stabilizer failed, causing the stabilizer to pivot.  He said the ladder went into the house and then slid out from underneath him."  Morse Expert Report ¶ 1 (Dkt. 21-5).  Therefore, the Court considers Morse's affidavit in deciding the instant motion.

### c.  Expert Opinion

The standard for reliability under <u>Daubert</u> is "liberal," <u>Best</u>, 563 F.3d at 176-177, and in deciding the admissibility of an expert, a court's duty is not to predict whether the expert will convince a jury.  The court's role is to determine whether the expert's testimony "rests on a reliable foundation and is relevant to the task at hand." <u>Daubert</u>, 509 U.S. at 597.

6

This Court finds part of Morse's opinion admissible and part inadmissible. Morse's opinion regarding the cause of the accident meets the Daubert standard. The standard is flexible, and "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Kumho, 526 U.S. at 141. Furthermore, testing is not required in every case, particularly where, as here, the expert conducted an examination of the physical evidence. Kamp v. FMC Corp., 241 F. Supp. 2d 760, 763-764 (E.D. Mich. 2002) (testing not necessarily required where expert relies on professional experience and conducts physical examination); Clark v. Chrysler Corp., 310 F.3d 461, 467 (6th Cir. 2002) ("Daubert does not require an expert to come in and actually perform tests in any given situation"). Morse's report explains how his visual inspection of the wear marks on the ladder and ladder stabilizer led to his opinion that the failure was the result of the shearing of the rivets due to wear and tear. This opinion is based on an inspection of the physical evidence; it is not an opinion that requires testing of a methodology or process. The Court thus finds Morse's opinion that the rivets failed due to shear stress admissible.

On the other hand, the Court concludes that Morse's opinion regarding alternate designs does not meet the Daubert standard. Morse does not explain how an alternative design would have prevented Jacobs' accident. He opines:

> [S]witching from hollow rivets to solid rivets doubles the cross-sectional area, halving the shear stress. Switching from two to four rivets, but keeping the same style rivets, would have the same effect: doubling the cross-sectional area and halving the applied shear stress. This would prevent the failure of the rivets.

Morse Aff. ¶ 45 (Dkt. 29-3). These calculations are intuitive enough, but neither the expert report nor the affidavit explains how Morse or a manufacturer would determine what weight-bearing capability is needed to prevent rivet failure. He only explains that a greater cross-sectional area leads to a greater load bearing ability. For Morse to conclude that the current

7

design is defective, he must show that an alternative design would have performed better. Gawenda v. Werner Co., 932 F. Supp. 183, 188 (E.D. Mich. 1996) (a plaintiff must show "sufficient evidence that a safer alternative design was available at the time [defendant] manufactured its product").  Morse indicates that four rivets would have prevented the failure, but he does not describe any analysis as to how he arrived at this figure.  Given the failure to articulate any scientific principles or other indicia of reliability, the Morse opinion is simply conclusory and lacks foundation.  Therefore, the Court finds that Morse's opinion that the ladder stabilizer was defectively designed is inadmissible.

Accordingly, Defendants' motion to bar Plaintiffs' expert is granted in part, with respect to the opinion that the ladder stabilizer was defectively designed, and denied in part, with respect to the opinion that the ladder stabilizer failed due to stress on the rivets.

### d.  Summary Judgment

In addition to moving to bar Plaintiffs' expert, Defendants also move for summary judgment.  Defendants argue that without Morse's report and testimony, Plaintiffs cannot prove their claims.  However, not all claims contained in Plaintiffs' complaint require Morse's testimony to succeed at trial.  Accordingly, Defendants' motion for summary judgment will be granted in part and denied in part, for the reasons set forth below.

### i.  Negligence

The Court agrees with Defendants that, without Morse's opinion regarding the ladder stabilizer's alleged design defect, Plaintiffs are unable to prove that the ladder stabilizer was negligently designed.  Nonetheless, the Court denies, in part, Defendants' motion for summary judgment because Plaintiffs' complaint alleges other acts of negligence that are not based on design defects.

8

With respect to negligent design, applicable Michigan law uses "a 'pure negligence, risk-utility test' to determine whether a manufacturer should be held liable for a defectively designed product." Miller v. Ingersoll-Rand Co., 148 F. App'x 420, 423 (6th Cir. 2005) (quoting Prentis v. Yale Mfg. Co., 365 N.W.2d 176, 186 (Mich. 1984)).  "Specifically, this entails 'a risk-utility balancing test that considers alternative safer designs and the accompanying risk pared against the risk and utility of the design chosen.'"  Id. (quoting Gregory v. Cincinnati Inc., 538 N.W.2d 325, 329 (Mich. 1995)).  As discussed above, Moore's opinion lacks objective basis for the assertion that an alternate design in the form of more or different rivets would have been safer than the current design.  It therefore is "insufficient to create a question of fact as to whether or not the chosen design was defective."  Gawenda, 932 F. Supp. at 188-189 (internal quotations omitted).  Because an essential element of the tort of negligent design is left unsatisfied, granting Defendants' motion for summary judgment as to negligent design is proper.

However, Plaintiffs' claim of negligence (Count I of the complaint) alleges grounds for recovery in addition to negligent design.  Plaintiff also alleges failure to warn and failure to test properly.  See Antcliff v. State Emps. Credit Union, 327 N.W.2d 814, 816-817 (Mich. 1982) (failure to warn is a ground for recovery); Taylor v. Wyeth Labs., Inc., 362 N.W.2d 293, 296-297 (Mich. Ct. App. 1985) (failure to test is a ground for recovery).  Defendants did not address these claims in their motion and did not move for summary judgment on them.  Therefore, barring Plaintiffs' expert's testimony regarding negligent design does not preclude the entirety of Plaintiffs' negligence claim.  Defendants have made no showing that the absence of expert testimony regarding the product's design would have any bearing on Plaintiffs' claims that the failure to test properly and warn adequately were actionable as negligent acts.  Accordingly, Defendants' motion for summary judgment with respect to Plaintiffs' negligence claim is

9

granted, in part, and denied in part; it is granted as to negligence claims based on negligent design, but denied as to any negligence claim based on other theories.

### ii. Breach of Warranty

Similarly, Plaintiffs' claim for breach of implied or express warranty is only partially implicated by the preclusion of Morse's design defect opinion.[3]    Applying the Michigan Supreme Court's decision in Prentis, courts in this District have held that design defect claims are governed by a negligence standard, whether they are presented under a negligence theory or implied warranty theory.    Gawenda, 932 F. Supp. at 187 ("[t]he Michigan Supreme Court has adopted a pure negligence, fault-based, risk utility balancing test . . . . whether plaintiff's design defect claim is based upon a theory of negligence or a theory of breach of an implied warranty") (citing Prentis, 365 N.W.2d at 186); Berry v. Crown Equip. Corp., 108 F. Supp. 2d 743, 757 (E.D. Mich. 2000) ("in an action against the manufacturer of a product based upon an alleged defect in its design, breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements") (quoting Prentis, 365 N.W.2d at 186).    It is therefore appropriate to preclude Plaintiffs from pursuing a design defect claim under a claim for breach of implied warranty as well as under a claim for negligence.

However, the cases cited above dealt with claims in which the theory of recovery was limited to a defective design theory.    Where a plaintiff does not so limit an implied warranty claim, a plaintiff need only allege that the product is not fit for its intended use.    Sundberg v. Keller Ladder, 189 F. Supp. 2d 671, 676 (E.D. Mich. 2002).    Because of the inherent distinction

---

[3] The allegation of breach of warranty is a cause of action separate from negligence theory in that negligence theory focuses on the defendant's conduct, while warranty focuses upon the fitness of the product, irrespective of the defendant's conduct.    Prentis, 365 N.W.2d at 186.

between negligence and warranty claims, the expert requirement that exists in negligent design cases does not extend to breach of implied warranty claims that are not premised on negligent design. <u>Olson v. Home Depot</u>, 321 F. Supp. 2d 872, 877 (E.D. Mich. 2004). Plaintiffs, in their complaint, make allegations under their implied warranty claim that do not relate to the ladder stabilizer's design and do not depend on Morse's opinion that the ladder stabilizer's design was defective. Plaintiffs allege that the ladder was not properly manufactured, which is distinct from the allegation of improper design. <u>See</u> Complaint ¶ 20 ("the ladder stabilizer was not properly designed and manufactured"). Accordingly, summary judgment on Plaintiffs' implied warranty claim is inappropriate to the extent that such claim is not based on negligent design.

### iii.  Home Depot's Liability

By state statute, sellers who are not manufacturers of the product are immune from product liability unless (i) the seller failed to exercise reasonable care and such failure was the proximate cause of the plaintiff's injury, or (ii) the seller breached an express warranty. Mich. Comp. Laws § 600.2947(6). This statute's purpose is to limit a non-manufacturer seller's liability whether a plaintiff sues under a negligence standard or an implied warranty standard. <u>Crosky v. BMW of N. Am., Inc.</u>, 532 F.3d 511, 520 (6th Cir. 2008). Defendants argue in their supplemental brief that this statute bars recovery from Defendant Home Depot, the seller, because Plaintiffs presented no evidence that Defendant Home Depot failed to exercise reasonable care or that there was an express warranty made. While Defendant's argument may be plausible, Defendants never moved to dismiss Defendant Home Depot as a defendant on these grounds. Instead, Defendants' motion for summary judgment was premised solely on Plaintiffs' inability to prove defective design. As Defendant did not move for summary judgment on these grounds, and Plaintiffs have not had an opportunity to respond to that argument, summary

11

judgment will not be granted.  See United States v. Perkins, 994 F.2d 1184, 1191 (6th Cir.1993) ("issues raised for the first time in a reply brief are not properly before this court").

### IV. Conclusion

For the foregoing reasons, Defendants' motion (Dkt. 21) to bar Plaintiffs' expert is granted in part and denied in part as follows: granted as to the opinion that the ladder stabilizer was defectively designed, and denied as to the opinion that rivet failure caused the ladder stabilizer to fail.

Defendants' request for summary judgment is granted in part and denied in part as follows: granted as to claims insofar as they are based on defective design, but denied in all other respects.[4]

SO ORDERED.

Dated:  September 8, 2011                          s/Mark A. Goldsmith
      Flint, Michigan                         MARK A. GOLDSMITH
                                            United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 8, 2011.

                                            s/Deborah J. Goltz
                                            DEBORAH J. GOLTZ
                                            Case Manager

---

[4] Plaintiff Kimberly Jacobs' claim of loss of consortium, society, and companionship (Count V of the complaint) is derivative of Plaintiff Andrew Jacobs' substantive claims.  Accordingly, summary judgment with respect to Count V parallels summary judgment with respect to the substantive claims: granted as to claims of defective design (under both negligence and implied warranty theories), and denied as to all other claims.